[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a marital dissolution action brought by the plaintiff, James M. Bilodeau, by complaint dated September 13, 2001. An answer and cross complaint were filed by the defendant, Sandra Bilodeau, on September 28, 2001. After an unsuccessful pretrial the case was tried on July 10, 2002.
Based on the evidence the court makes the following findings:
 The parties were married on June 28, 1998 in Southbridge, Massachusetts;
 The plaintiff resided in Connecticut for at least one year prior to the filing of the complaint;
 No children have been born to the defendant since the date of the marriage;
Neither party presently receives assistance from the State of Connecticut or from any town or municipality.
The plaintiff is a 50 year old chiropractor with an office in Massachusetts. The defendant is a 54 year old high school graduate currently residing in Phoenix, Arizona. She has a 15 year old son from a prior marriage. The plaintiff has three adult children from a prior marriage.
After meeting at a local (Putnam) community theater group in October of 1995 the couple began dating. In early 1996 the defendant, who had a business background, went to work for the plaintiff in his office in Dudley, Massachusetts, for the sum of $400 weekly. She worked there for about a year but was laid off because his business income dropped from 130 thousand in 1995 to 95 thousand in 1996. In that year the defendant received a divorce settlement of $15,000 from her former husband and she purchased a single family residence on 31 Child Hill Road, Woodstock, Connecticut, in September of 1996 for $69,500. The defendant's father gave her $5000 at the time of the purchase to be used for immediate repairs to the premises, if needed. The plaintiff did not assist financially with the purchase as he was indebted to the Internal Revenue Service in the amount of $90,000 for the years 1991-1995.
The plaintiff moved to the defendant's residence in September of 1996 and at his urging the parties entered into a written rental agreement (Defendant's Exhibit 3) in which he promised to pay to her $600 monthly rent to occupy the premises for one year with provisions to renew annually.
The parties were married on June 28, 1998. Since the marriage the CT Page 9043 defendant has worked only on a part time basis, a few weeks here and there and not at all since the parties separated. From the outset of their relationship the plaintiffs preexisting tax debt has plagued the parties. The plaintiff required $2000 from the monies given to the defendant in 1996 by her father to enable him to purchase a car because his credit was bad. The defendant has frequently expressed concern that her residence would be subject to a levy by the IRS. The plaintiffs problems with the IRS have been an ongoing source of stress. As recently as 2001 he has underpaid the IRS and has borrowed thousands from his family to keep his business open. From 1996 until their marriage the plaintiff had been making the mortgage payments and other expenses from the parties' joint checking account. After their marriage and until June of 2001 the plaintiff gave $1000 weekly to the defendant who assumed the payment of monthly bills. In June of 2001 the defendant learned of the renewed intention of the IRS to levy upon the property of the plaintiff. She was alarmed and threatened to begin a divorce action.
Sometime in 2001 the defendant began corresponding with her first husband whom she had not seen in fifteen years. Regular e-mails were sent to him in Arizona. The plaintiff became aware of the communications and confronted the defendant who denied any romantic interest in the man that she had married as a teenager and divorced soon thereafter. Nevertheless, the plaintiff encouraged the defendant to travel to Phoenix to see him. She did so in August of 2001 for a week. When she and her son returned to the residence she found that the plaintiff had moved out. The parties have lived apart since. In November of 2001 the defendant removed to Arizona where she and her son by her second marriage reside with her former first husband. She remains unemployed and receives $650 monthly from her father for her support. Her son receives $264 weekly from social security because of the death of his father in 2001. She is in relatively good health.
The defendant renovated her residence in Woodstock over the years with monies given to her by her father, who also purchased a car for her. She sold the residence in October of 2001 for $115,400. The net proceeds have been held in escrow. By agreement $12,500 has been previously released to the defendant.
The plaintiff's chiropractic business is currently in decline. From a 1999 gross income figure of $165,000, the income fell to $58,000 in 2001, a drop the plaintiff attributes to his present mental health issues. He is being treated for depression and works 28 to 30 hours per week. He lives with his parents in Springfield, Massachusetts and commutes to his business in a `94 station wagon registered in the name of the defendant. CT Page 9044
The parties are at odds over a property settlement, alimony and counsel fees. Each have submitted proposed orders to the court.
After hearing the testimony the court concludes the marriage has broken down irretrievably and that the parties are equally responsible for the breakdown. The defendant has never adjusted to the stress caused by the plaintiff's precarious financial situation due to his tax troubles, although she was aware of his difficulties long before they were married. On the other hand, the plaintiff has not communicated with the defendant relative to her concerns and has refused to change his business practices to avoid future tax problems. He prefers to cite the e-mail relationship of the defendant as the cause of the marital breakdown although the court disagrees.
The separation has now lasted nearly one year. There is no reasonable likelihood of reconciliation. The marriage should be dissolved. Since the parties share fault for the breakdown, the court, being mindful of the provisions of Chapter 815j of the Connecticut General Statutes, particularly the criteria found in §§ 46b-81, 46b-82 and relevant case law, finds the following orders to be fair and equitable:
 1. The marriage of the parties is dissolved on the ground of irretrievable breakdown;
2. Neither party is awarded alimony;
 3. By way of property settlement the defendant is entitled to keep the net proceeds of the sale of her Woodstock property in the amount of $46,782.48 free of any claim of the plaintiff to be reimbursed for his rental payments, utilities, or any advance payment of principal;
 4. Each party shall retain the vehicles in their possession and execute documents necessary to transfer title;
 5. The plaintiff agrees to pay and hold the defendant harmless from any business and personal federal and state income tax for the tax years 1998 to the present;
6. No order of counsel fees is entered;
7. With the exception of specific orders to the contrary herein, each party shall be entitled to the CT Page 9045 ownership of the assets and shall be responsible for the payment of the liabilities shown on his or her respective financial affidavits and shall hold the other harmless from any liabilities set forth therein or any liabilities in connection with the assets.
8. The plaintiff shall prepare the judgment file.
Potter, J.